Argued 14 October; decided 28 October, 1901.

## THOMAS *v.* PORTLAND.

[66 Pac. 439.]

INVALID STREET ASSESSMENTS—CONSTRUCTION OF CURATIVE ACT.

1.   Section 156 of the Portland Charter of 1898 (Laws, 1898, pp. 101, 163), providing that, if, on the completion of any street improvement, when the cost thereof is declared by the common council to be a charge on the adjacent property, any assessments levied to defray the cost thereof are adjudged to be invalid, the city may bring actions against the owners of abutting property on which the cost of such improvement might be charged, and recover the cost of such improvement, was not intended to and does not in and of itself cure or confirm defective assessments, but was intended to afford a new remedy for the enforcement of assessments that have been judicially declared void, and only such are affected.

ACT CURING VOID ASSESSMENTS—DUE PROCESS OF LAW.

2.   An act providing that, after an assessment for a public improvement has been adjudged void the municipality may maintain an action against the owners of the property assessed, is not a taking of property without due process of law, for the parties affected are allowed a day and time to be heard on the right and manner of assessment.

RES JUDICATA.

3.   A decree declaring void an assessment for a public improvement is not a bar to a subsequent action or suit by the municipality to collect the cost of the work from the property benefited.

From Multnomah:  JOHN B. CLELAND, Judge.

Suit by E. A. Thomas and others against the City of Portland and others.   From a decree in favor of the plaintiffs, the defendants appeal.                                        AFFIRMED.

For appellants there was a brief over the names of *Joel M. Long,* City Attorney, and *Ralph R. Duniway,* with an oral argument by *Mr. Duniway.*

For respondents there was a brief over the names of *Wm. M. Gregory* and *Geo. Gordan Gammons,* with an oral argument by *Mr. Gregory.*

MR JUSTICE WOLVERTON delivered the opinion.

.   In March, 1898, the common council of the City of Portland by ordinance declared it expedient and necessary to

repair Corbett Street from the westerly line of Hood Street
to the north line of Bancroft Avenue, and directed that the
cost of such repair be assessed upon the adjacent property.
The nature of the work undertaken, however, was not, as a
matter of fact, a repair, but an original improvement.   This
is conceded by the appellants, and the case is presented upon
that hypothesis.   Subsequently the common council proceeded
to make the improvement without the petition of property
owners prescribed by section 98 of the city charter of 1893
(Laws, 1893, pp. 777, 842), assessed the abutting property
with the cost of the improvement, and had a statement thereof
entered in the docket of city liens.   Warrants having been
thereafter issued, directing the collection by levy and sale of
the property involved, this suit was instituted to restrain pro-
ceedings thereunder, and to declare the assessments void.   A
general demurrer to the complaint having been overruled, the
defendants answered, alleging a ratification of the acts of the
common council in making such assessments, by virtue of the
provisions of section 156 of the charter of the City of Port-
land, as adopted by the legislative assembly October, 1898
(Laws, 1898, pp. 101, 163), thereby barring the further prose-
cution of the suit.   A decree having been rendered in accord-
ance with the prayer of the complaint, the defendants appeal.

1.   It is urged in their behalf that this section of the
charter of 1898, *ex proprio vigore,* cures, ratifies, and confirms
the assessments complained of, and therefore renders the
absence of the petition of no avail to the plaintiffs.   If they
are right, the question could as well be determined on the
demurrer as upon the answer, as the proceedings must have
been held validated on demurrer with respect to the attending
infirmity, which it is admitted would otherwise render the
assessment void, and consequently no suit would lie to nullify
them.   Tersely stated, so far as the section has a bearing here,
it provides that if, upon the completion of any street improve-
ment, etc., when the cost thereof is declared by the common
council to be a charge upon the adjacent property, any assess-
ment or  assessments levied to defray the cost thereof are

found or adjudged to be invalid because of defects, jurisdictional or otherwise, occurring in any stage of the proceedings, the city is empowered to bring actions against the owner or owners of abutting property upon which the cost of such improvement, etc., might or could be charged and imposed under the provisions of the act, and recover the cost of such improvement, etc., property chargeable thereunder to the several parcels of land involved. This has relation to assessments made under the charter of 1898. A similar provision is made in relation to assessments levied under prior charters, except that the amount recoverable is the proportion of the cost theretofore charged to the several parcels of land involved. There is here no validation of the assessments as made by the common council, so that the same may be enforced in the manner pointed out by the charter, notwithstanding any irregularity attending their consummation; but in the section under consideration the purpose is patent to treat as effective the finding or adjudication of invalidity, and to provide an entirely new remedy, in which the defects attending the assessment may be disregarded.

It would not be competent for the legislature to validate such an assessment, notwithstanding an adjudication of a court declaring it a nullity, and thus permit it to be enforced in the manner pointed out by the charter, through the issuance of a warrant and levy and sale of the property thereunder. A statute which operates to annul or set aside the final judgment of a court of competent jurisdiction, and to disturb or defeat rights thus vested, is inoperative and void. By reason of the distribution of powers under the constitution, assigning to the legislature and the judiciary each its separate and distinct functions, one department is not permitted to trench upon the functions and powers of the other. As Chief Justice BIGELOW observed in *Denny* v. *Mattoon,* 2 Allen, 361, 378 (79 Am. Dec. 784): "It is the exclusive province of courts of justice to apply established principles by rendering judgments and executing them by suitable process. The legislature have no power to interfere with this jurisdiction in such manner as

to change the decision of cases pending before courts, or to impair or set aside their judgments, or to take cases out of the settled course of judicial proceeding. It is on this principle that it has been held that the legislature have no power to grant a new trial or direct a rehearing of a cause which has been judicially settled  *  *  *  A *fortiori,* an act of the legislature cannot set aside or annul final judgments or decrees. This is the highest exercise of judicial authority.'' But we need not pursue this special subject further, as the law was so declared by this court in *Nottage* v. *City of Portland,* 35 Or. 539, 556 (58 Pac. 883, 76 Am. St. Rep. 513), and the section under discussion held not to be obnoxious to the rule. Statutes relating to the validation and curing of assessments and tax proceedings have become quite common, and the modes adopted for effectuating the purpose are as diverse, almost, as the statutes themselves, the legislation being formulated and directed to meet the emergencies as they arose; and it may be said of such legislation, it being remedial in its character, that it has generally received a liberal construction, with a view of giving it substantial effect. Perhaps the most general form of curative legislation is to adopt a scheme of reassessment. This may apply generally, or be directed to specific cases. Such reassessments are usually intrusted to the officers whose duty it was to make the assessment in the first instance. But the duty is not infrequently assigned to different and distinct bodies or functionaries, and even the legislature itself has made the curative assessment: Cooley, Taxation (2 ed.), 309; *Schenley* v. *Commonwealth,* 36 Pa. 29, 56 (78 Am. Dec. 359); *Richman* v. *Supervisors,* 77 Iowa, 513 (42 N. W. 422, 4 L. R. A. 445,* 14 Am. St. Rep. 308**); *In re Van Antwerp,* 56 N. Y. 261; *Tifft* v. *City of Buffalo,* 82 N. Y. 204; *Frederick* v. *City of Seattle,* 13 Wash. 428 (43 Pac. 364); *City of Emporia* v. *Norton,* 13 Kan. 569; *Mattingly* v. *District of Columbia,* 97 U. S. 687; *State ex rel.* v. *City of Newark,* 34 N. J. Law, 236.

---

*See briefs of counsel in full.

**See note, Construction of Curative Acts.

The rationale upon which such curative legislation proceeds is that there has been a futile attempt to levy an assessment, where the parties affected are in justice and in equity bound to contribute to the public demand, and that they ought not to be permitted to escape the burden by reason of some oversight or nonobservance of the prescribed mode of proceeding in the first instance, where the irregularities do not extend to an act or omission that the legislature is without power to authorize primarily. In all such cases the legislature may prescribe a new remedy, so as to require payment, when justice and equity demand it. As was said by Mr. Chief Justice DIXON in *Mills* v. *Chaleton,* 29 Wis, 400 (9 Am. Rep. 578); "The taxing power, when acting within its legislative sphere and unrestrained by positive constitutional provision, is a farreaching and unlimited power, which knows no stopping place nor moderation of force until it has accomplished the purpose for which it exists, namely, the actual enforcement and collection of the tax. It moves constantly forward to its object until that is accomplished, and, if turned aside by any obstacles or impediments, may return again and again to the same tax or assessment, until, the way being clear, the tax is paid or the assessment collected." In the exercise of this power the legislature may revise or validate retrospectively all tax proceedings that it might have authorized prospectively, and it may cure defects and render immaterial statutory requirements that it could have dispensed with in the first instance. Beyond this it cannot go, and all acts intended as curative, where it is without power or authority to devise the mode and direct an assessment primarily, are without validity. Now, by the express terms of section 156 (Laws, 1898, pp. 101, 163), it is without application until the assessment is found or adjudged to be invalid, and it was not intended to validate wherever or whenever an irregularity existed, and thus relieve the authorities from an observance of the charter provisions relative to street improvements and assessments. The clear purpose of the section was undoubtedly to afford a remedy where the regularly prescribed assessments have been nulli-

fied, and in no other event can it have application. It being assumed by the legislature, as it had the right to do, that the parties involved, although not bound by the letter of the law to pay the demand assessed upon their property, yet, notwithstanding, they were in justice and equity obligated to that end, it has devised and prescribed a new remedy, which is not by the issuance of a warrant upon the original assessment, and levy and sale thereunder, but by an action, so denominated, in the circuit court, where all interested parties might be brought before it and the lien established and enforced by decree.

2. The new remedy prescribed may be said to be in the nature of a reassessment, although all the formalties required by the original assessment are not prescribed or required to be observed: (see *In re Van Antwerp,* 56 N. Y. 261), but the parties interested are given their day in court, and an opportunity to be heard upon all questions of legislative power and jurisdiction, so that they are not deprived of any rights or property without due process of law.*

Nor is it a valid objection to invoking the remedy that the property has changed hands in the meantime: *Tallman* v. *City of Janesville,* 17 Wis. 73.

Thus it seems to us that a proper construction of section 156 precludes the idea that it operates to cure all irregular assessments at once, and as against the authority of the courts to decree them void, but that it is without application until they have been found or adjudged to be invalid, at which time it becomes operative, as affording a new and more effective remedy for the enforcement of an equitable obligation. In this view, the section does not constitute a bar. to the jurisdiction of a court of equity to annul the original assessment: *Nottage* v. *City of Portland,* 35 Or. 539 (76 Am. St. Rep. 513, 58 Pac. 883), does not impinge upon this construction, nor is it authority for defendants' contention. There an action had been instituted to recover from the city a sum of money paid to it

---

*Note.—Constitution of the United States, Fifth Amendment.

by an abutting owner under an assessment that had been subsequently nullified by an adjudication of the court.    The question was whether section 156 afforded a defense to the action, and it was held that it did.    The adjudication of invalidity had preceded the action, and the condition existed that gave it operation.    It was not determined that the effect of the section was to ratify and confirm the assessment so as to validate it at once and effectually for all purposes, but that the answer of the city, setting up the statute as a defense, was for all practical purposes equivalent to the bringing of an action, within its meaning and purpose.

3.    It is suggested that the suit should, in any event, be dismissed, without prejudice to another, for the reason that it might stand in the way of the action under the charter; but a decree is not a bar to the new remedy or proceeding: Cooley, Taxation (2 ed.), 312;   2 Dillon, Mun. Corp. (4 ed.) § 814; *City of Emporia* v. *Norton,* 13 Kan. 569;   *Frederick* v. *City of Seattle,* 13 Wash. 428 (43 Pac. 364).

The decree of the court below will therefore be affirmed and it is so ordered.                                              AFFIRMED.