Argued and submitted September 15, appeal dismissed November 24, 2010,
petition for review denied April 7, 2011 (350 Or 230)

## CITY OF EUGENE,
*Plaintiff-Respondent,*

*v.*

## SHANNON J. SMYTH,
aka Shannon Jensen Smyth,
*Defendant-Appellant.*

Lane County Circuit Court
250828826; A141624

243 P3d 854

John Halpern, Jr., argued the cause and filed the brief for appellant.

Jona J. Maukonen argued the cause for respondent. With her on the brief were C. Robert Steringer and Harrang Long Gary Rudnick P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Defendant was charged with driving under the influence of intoxicants (DUII) in violation of Eugene City Code (ECC) 5.005.[1] He was convicted in municipal court and appealed to the circuit court, where he was convicted after a trial *de novo*. Defendant now appeals to this court, arguing that the circuit court erred by excluding evidence that his acts of drinking alcohol and driving were not voluntary. In response, the city argues that we do not have jurisdiction to reach defendant's argument. That is so, the city argues, because (1) a defendant who has been convicted in municipal court and circuit court can appeal to this court only if the defendant is challenging the constitutionality of the ordinance he was convicted of violating and (2) here, defendant does not raise such a challenge. We agree with the city and, therefore, dismiss the appeal.[2]

The relevant facts are undisputed. Defendant is a veteran who suffers from post-traumatic stress disorder (PTSD). In 2008, defendant was under the care of a doctor at the Veterans' Administration Hospital in Eugene. The doctor prescribed defendant a drug, Ambien, to help him sleep.

On March 6, 2008, defendant took the Ambien as prescribed and went to bed. The next morning, defendant woke up to discover his car was gone and he had a DUII citation in his pocket. Defendant had not consumed any alcohol before going to bed, and he has no memory of what happened between the time he went to bed and the time he woke up.

---

[1] ECC 5.005 provides:

"The provisions of ORS Chapters 801, 802, 803, 805, 806, 807, 809, 810, 811, 813, 814, 815, 816, 818, 819, 820, 821, 822, 823, 825 and OAR 740.100.0010 issued thereunder, and Chapter 153, except for ORS 153.093 and ORS 153.125, are hereby adopted, and violations thereof shall constitute an offense against the city."

ORS chapter 813 contains Oregon's DUII statute, ORS 813.010; therefore, the text of the city DUII ordinance and the state DUII statute are the same.

[2] After defendant filed his opening brief, the city moved to dismiss the appeal for lack of jurisdiction. The Appellate Commissioner denied the motion, but that denial does not preclude us from reaching the city's jurisdictional argument, which it raises again in its brief. *See generally* ORAP 7.15(3); *State v. Peterson*, 229 Or App 546, 552-53, 215 P3d 897 (2009) (reconsidering mootness argument decided by the Appellate Commissioner).

Defendant contacted his doctor, distraught over what had happened. The doctor told defendant that he needed to continue to take the Ambien to control his PTSD symptoms. Defendant followed the doctor's orders.

On March 15, 2008, defendant took the Ambien as prescribed and went to bed. The next morning, he woke up to discover, for the second time, his car was gone and he had a DUII citation in his pocket. As with the first DUII incident, defendant had not consumed any alcohol before going to bed, and he has no memory of what happened between the time he went to bed and the time he woke up.

Defendant was charged with one count of DUII in violation of ECC 5.005, for each incident. The charges were brought in separate cases. This case concerns the first incident.[3]

Defendant was convicted in municipal court, and he appealed to the circuit court for a trial *de novo* pursuant to ORS 221.359.[4] Defendant's defense theory was that the Ambien put him in a state in which he had no conscious control over his actions and, therefore, his acts of drinking and driving were involuntary. To support his theory, defendant sought to introduce evidence of his use of Ambien, as well as evidence of Ambien's side effects. Defendant's proffered evidence included a document detailing Ambien's side effects, as well as testimony from Lang, an expert witness. Lang, a nurse practitioner licensed to prescribe medications, would have testified that the medical community has come to recognize "sleep behaviors" as a highly undesirable and potentially dangerous side effect of Ambien. Lang had reviewed the list of medications defendant was taking at the time of his

---

[3] Defendant separately appealed the judgment concerning the March 15, 2008, incident. *City of Eugene v. Smyth (A141645)*, 239 Or App 186, 245 P3d 146 (2010).

[4] ORS 221.359 provides, in part:

"(1) Except as provided in subsection (3) of this section, whenever any person is convicted in the municipal court of any city of any offense defined and made punishable by any city charter or ordinance, such person shall have the same right of appeal to the circuit court within whose jurisdiction the city has its legal situs and maintains its seat of city government as now obtains from a conviction from justice courts."

DUII arrests, as well as the police reports and video recordings of the arrests, and she would have testified that, "to a reasonable degree of medical certainty, * * * [defendant's] actions in drinking and driving on the nights of March 6th, 2008 and March 15th, 2008, were not voluntary."

The city filed a motion *in limine* requesting an order "prohibiting the defendant from introducing evidence, or arguing to the jury, that his act of driving under the influence of intoxicants was not a knowing or voluntary act." The city relied on *State v. Miller*, 309 Or 362, 364, 788 P2d 974 (1990), a case in which a DUII defendant sought to introduce evidence that he did not know that the coffee drink he consumed before being arrested for DUII contained alcohol, and the Supreme Court held that "being under the influence of an intoxicant is a strict liability element[.]" The city argued that, under *Miller*, it did not need to prove that defendant's acts of drinking alcohol and driving were voluntary.

Defendant disputed the city's interpretation of *Miller*, arguing that *Miller* involved the requirement of a culpable mental state, not the requirement of a voluntary act. Defendant explained that ORS 161.095 establishes two prerequisites to criminal liability, a voluntary act and a culpable mental state, and that his argument was based on the voluntary act requirement established by ORS 161.095(1), whereas the defendant's argument in *Miller* was based on the culpable mental state requirement established by ORS 161.095(2). ORS 161.095 provides:

"(1)   The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing.

"(2)   Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

Defendant pointed out that, in *Miller*, the Supreme Court identified the issue in the case as "whether a defendant may be convicted of violating ORS 813.010 [the DUII statute] without proof of a culpable mental state as to the element of

being under the influence of an intoxicant." *Miller*, 309 Or at 364. Defendant contended that, as the facts of *Miller* suggest, the issue was whether the defendant knew, or should have known, that he had consumed alcohol, not whether he did so voluntarily.

The circuit court understood defendant's argument and agreed that ORS 161.095(1) and (2) establish independent prerequisites to criminal liability, but held that *Miller* controlled because, in its view, the *Miller* court treated the two requirements as one:

"Well, I reluctantly agree that I think the *Miller* decision is dispositive here. * * *

"* * * * *

"* * * [Culpable mental state] means intentionally, knowingly, recklessly, or with criminal negligence. That seems to be a different concept than voluntariness, but I think that the majority in *Miller* seems to gloss the two together.

"Again, I don't—whether I agree with that analysis or not, I think it, in fact, is the analysis, and I think they have clearly said that you don't need either a culpable mental state or voluntariness to commit the crime of driving under the influence. I think that's troubling, but I think that's the law. And so I am going to grant the city's motion *in limine* on that basis."

After the circuit court granted the city's motion, defendant tried his case to the court on stipulated evidence, and the court found defendant guilty. The court stated that it believed that defendant was "essentially unconscious when this happened," but that it was required to find defendant guilty under *Miller*. The court sentenced defendant to 24 months' probation, subject to general and special conditions, including completion of two days in jail and payment of fines and fees.

As noted, on appeal, defendant assigns error to the trial court's exclusion of evidence relating to whether his acts of drinking alcohol and driving were voluntary, and the city argues that we do not have jurisdiction to reach defendant's

argument because defendant is not challenging the constitutionality of the DUII ordinance he was convicted of violating.

■■    Our jurisdiction is not plenary; it is created and limited by statute. *City of Lowell v. Wilson*, 197 Or App 291, 296, 105 P3d 856, *rev den*, 339 Or 406 (2005). Our jurisdiction over circuit court judgments of conviction for violating municipal ordinances is governed by ORS 221.360, which provides:

> "In all cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained as indicated in ORS 221.359, such person shall have the right of appeal to the circuit court in the manner provided in ORS 221.359, regardless of any charter provision or ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise. An appeal may likewise be taken in such cases from the judgment or final order of the circuit court to the Court of Appeals in the same manner as other appeals are taken from the circuit court to the Court of Appeals in other criminal cases. Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision of the appellate court shall be upon such constitutional issue only."

Under ORS 221.360, when a defendant has been convicted in municipal court, and then convicted in circuit court following a trial *de novo*, we have jurisdiction to review the circuit court judgment only if the defendant is challenging the constitutionality of the ordinance he was convicted of violating. *Wilson*, 197 Or App at 299-301; *see also City of Salem v. Bruner*, 299 Or 262, 265, 702 P2d 70 (1985); *City of Klamath Falls v. Winters*, 289 Or 757, 763, 619 P2d 217 (1980), *appeal dismissed*, 451 US 964 (1981); *City of Salem v. Polanski*, 202 Or 504, 509-10, 276 P2d 407 (1954).[5] As we explained in *Wilson*, "the essential prerequisite—the *sine qua non*—of our jurisdiction under ORS 221.360 is that the appellant raise a cognizable facial or as-applied challenge to

---

[5] *Cf. City of Lake Oswego v. Mylander*, 301 Or 178, 182, 721 P2d 433 (1986) (distinguishing *Bruner* and *Winters* in a case in which the defendant was convicted in municipal court of a violation based on a statute and not on a municipal ordinance or charter provision).

the constitutionality of the ordinance." *Wilson,* 197 Or App at 300-01.

■        The requirement of a constitutional challenge to the ordinance the defendant was convicted of violating was first identified in *Polanski,* more than 50 years ago.[6] In *Polanski,* the Supreme Court held that "there can be no appeal from the circuit court * * * in cases involving ordinance violations, arising in the municipal court and appealed to the circuit court, excepting only where constitutional questions are involved." 202 Or at 510.

Since then, the Supreme Court has reiterated its construction of the statute adopted in *Polanski* and sustained ORS 221.360, so construed, against constitutional challenge. *See, e.g., Bruner,* 299 Or at 266 ("The effect of [ORS 221.350 and ORS 221.360] as interpreted is to preclude the right to plenary appeal in cases such as the present."); *Winters,* 289 Or at 764-77 (sustaining ORS 221.360, as construed in *Polanski,* against the assertion that differentiation in appellate process afforded persons convicted in municipal courts of municipal code violations violated federal Equal Protection Clause and Article I, section 20, of the Oregon Constitution). Accordingly, *"Polanski*'s construction of ORS 221.360 remains 'a part of the statute as if written into it at the time of its enactment.'" *Wilson,* 197 Or App at 299 (quoting *Stephens v. Bohlman,* 314 Or 344, 350 n 6, 838 P2d 600 (1992)).

■        Thus, the question in this case is whether defendant challenged the constitutionality of the DUII ordinance. For the following reasons, we conclude he did not.

Defendant's argument before the circuit court that the city was required to prove a voluntary act as a predicate to criminal liability was purely statutory. He relied solely on ORS 161.095(1). He told the court he had "a jury instruction that would quote the statute and say, [']The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act.[']" He directed the

---

[6] ORS 221.360 has been amended twice since the Supreme Court's decision in *Polanski,* but neither amendment affects *Polanski*'s analysis. *See* Or Laws 1969, ch 198, § 78 (substituting "Court of Appeals" for "Supreme Court"); Or Laws 1985, ch 342, § 17 (deleting references to "district courts").

circuit court to ORS 161.095(1), and, when the court read the statute aloud, defendant confirmed it was the statute he was relying on. When the circuit court read ORS 161.085(2), which defines "voluntary act," defendant replied that his argument was that, under ORS 161.095(1), the city had to prove a voluntary act, as defined by ORS 161.085(2)—that is, the city had to prove that defendant acted consciously:

> "THE COURT:   Voluntary act—They define voluntary act further in 085. It means a bodily movement performed consciously and includes the conscious possession or control of property.

> "[DEFENSE COUNSEL]:   Thank you. And that's what we are addressing, Your Honor. I am specifically making reference to those two terms.

> "[W]e should be able to present this argument to a jury and argue to them that in this case, on these facts, this man's acts were not voluntary in any normal sense of the word 'voluntary.' And the word 'voluntary' does not have any more particular description than that."

When the circuit court referenced ORS 161.095(2)'s requirement of a culpable mental state, defendant reiterated that he was relying on the independent requirement of a voluntary act under ORS 161.095(1):

> "There are four * * * culpable mental states. * * * *Miller* is saying that one of those is not required for a DUII. It never says this minimal requirement of a voluntary act is not required.

> "We just want to offer evidence of that, and the city's motion is to not allow the jury to hear this and factor that into their decision in this unique set of facts."

Defendant did not cite, or even allude to, any constitutional basis for his claim that the city had to prove a voluntary act as a prerequisite to criminal liability. He did not, for example, argue that imposing criminal liability for an unconscious or involuntary act violates the federal Due Process Clause.

The circuit court understood defendant's argument as a statutory argument. As set out above, it ultimately held that, under *Miller*—which involved statutory prerequisites

to criminal liability—the city was not required to prove a voluntary act. Defendant did not ask the circuit court to determine, and the court did not determine, whether the DUII ordinance was constitutional.

As in the circuit court, defendant's argument regarding the requirement of a voluntary act on appeal is statutory. In his brief, defendant argues:

> "In applying the holding of *State v. Miller*, * * * [t]he trial court ignored the difference between a culpable mental state, which was the basis of the holding in *Miller*, and the statutory requirement of the commission of a voluntary act, which statutory requirement was not discussed in *Miller*."

He specifically relies on ORS 161.095(1)'s requirement of a voluntary act, stating that "[t]he court in *Miller* was not presented with facts that necessitated a discussion of, and did not discuss, the issue of a voluntary act as required by ORS 161.095." Critically, defendant did not argue before the circuit court, and does not argue now, that, if the DUII ordinance does not require a conscious or voluntary act, it is unconstitutional.

■ Defendant's only constitutional claim, in the circuit court and on appeal, is that a defendant has a constitutional right to a jury trial under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. That claim is, of course, correct. A defendant has a constitutional right to a jury trial, and that right includes the right to have a jury find all the elements of the charged offense beyond a reasonable doubt. *See, e.g., Blakely v. Washington*, 542 US 296, 313, 124 S Ct 2531, 159 L Ed 2d 403 (2004) (under the Sixth Amendment, "every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment" (emphasis in original)). But defendant's constitutional claim is not the type of claim required for us to have jurisdiction under ORS 221.360. It is not a claim that the DUII ordinance is unconstitutional.

Defendant's constitutional claim is dependent on his statutory argument; he argues that, as a matter of statutory law, a voluntary act was an element of DUII and then argues that, as a matter of constitutional law, he has a right to have

the prosecution prove that element, like all other elements, to a jury. Defendant has not made an independent constitutional challenge to the DUII ordinance. Therefore, we do not have jurisdiction over this appeal and, accordingly, we dismiss.

Appeal dismissed.